(No. 20410.—

HANS LEHMAN, Plaintiff in Error, *vs.* GRACE HELEN
LEHMAN, Defendant in Error.

*Opinion filed October 23, 1931.*

BERNARD J. JURON, for plaintiff in error.

WM. SHERMAN STAHL, for defendant in error.

Mr. COMMISSIONER PARTLOW reported this opinion:

Plaintiff in error, Hans Lehman, filed his bill for divorce
in the superior court of Cook county charging his wife,
Grace Helen Lehman, with adultery, praying for the cus-
tody of their three children and for the settlement of cer-
tain property rights. Defendant in error answered the bill,
denying the charge, and she filed a cross-bill charging plain-
tiff in error with cruelty, adultery and drunkenness. There
was a hearing before the chancellor, the original bill was
dismissed, a decree was entered upon the cross-bill on the

grounds of drunkenness and cruelty, the custody of the children was given to the mother and she was awarded alimony and the use of the house in which they lived. Upon appeal to the Appellate Court the decree was affirmed, and the case comes to this court on a writ of *certiorari.*

It is contended by plaintiff in error that he did not have the fair and impartial trial to which he was entitled under the law; that the chancellor considered evidence which was not legally admitted; that the preponderance of the evidence does not support the decree, and that the decree does not follow the evidence.

Plaintiff in error was the first witness called, and he testified at considerable length concerning certain matters which he claims tended to establish the charge alleged in the bill. If his testimony was true it established the charge in his bill. He testified that certain other witnesses were present and would testify to these facts. On cross-examination counsel for defendant in error presented to plaintiff in error for identification about thirty exhibits, consisting of poems, letters and pictures of the most vile and obscene nature. They were then handed to the chancellor for inspection. Plaintiff in error was asked where he got them. He replied that he had been in possession of some of them since he was a boy fifteen or sixteen years old; that some of them came from France and some of them belonged to third parties; that he should have destroyed them but had not done so; that he kept them locked in a drawer at his home, and that they had been taken from the drawer by someone and came into the hands of the solicitor for his wife. These exhibits appear in the record but they are not abstracted. Immediately after the chancellor read and examined some of these documents he made the following remarks:

"No man that has a sane mind would have this around him or ever seen it. You needn't go any further with this. This man is unfit to associate with decent people— absolutely unfit to associate with decent people. I do not

care to see any more. This man is a degenerate—absolutely degenerate. I never saw that in all my life—never even in the police courts on Harrison street. I have seen the worst that I thought could ever be seen, but nothing like this—nothing like this for vileness and absolute indecency. A boy of sixteen does not have that stuff. I never saw a boy so debased. I used to be superintendent of schools and never in all my experience have I seen anything like this; nothing like it; nothing that ever was so convincing as to the degeneracy of a mind. This man has got a degenerate mind. He would not be safe in any society. You are a degenerate, sir, and if the manufacturers' society will continue you I will let them know at once that they are harboring not only a moron but a degenerate of the worst type. Nothing like that was ever exhibited in any court. The remarks are not severe. Oh, my God! Could a man with the sane brain keep that about him? Why, no, he could not. He is indecent. It is the act of the inhuman; of a beast; worse than a beast; and he comes in here and seeks to have the custody of these three little children after having kept that in his home all these years. An insane mind—a degenerate mind. I do not want any more evidence on his bill. His bill will be dismissed. I won't spend any more time on it at all or listen to this man or anything he says. Very well; that bill is dismissed. Go ahead on your cross-bill—don't need any more evidence on that bill."

Defendant in error and her mother then testified relative to the charges in the bill and cross-bill.

Defendant in error denied the charge of adultery as testified to by plaintiff in error. The chancellor asked her about the thirty exhibits, and she testified concerning them. Plaintiff in error was then permitted to offer evidence in rebuttal to that offered by defendant in error, but he was denied the right to offer any evidence under his original bill. At the close of all of the evidence the chancellor made

a lengthy statement giving his reasons for the decree which was entered. He commented at considerable length on the exhibits, which apparently had a great deal to do with the decree which was entered. Plaintiff in error was entitled to a fair and impartial trial. He was entitled to present all of his evidence under his bill in an orderly manner under well known rules of law. As the first witness called, during his cross-examination he was asked to identify the exhibits. Counsel for defendant in error on cross-examination had a right to ask plaintiff in error to identify the exhibits but at that time had no right to introduce the exhibits in evidence. They should have been offered in evidence while the evidence on behalf of defendant in error was being presented. The exhibits were not in evidence. They had not been offered in evidence and were not properly before the chancellor at the time the remarks in question were made by him. The question of the admissibility of these exhibits under the proof is not before this court in this case, but it is apparent that some of them, if not all of them, were not admissible in evidence. The chancellor, however, on account of these exhibits made the statement above set forth, refused to permit plaintiff in error to introduce any further evidence under his bill and ordered defendant in error to proceed to take her evidence under her cross-bill, which was done. After defendant in error had offered her evidence under her cross-bill plaintiff in error was permitted to testify in denial of the statements made by her but the court expressly refused to permit him to introduce any evidence under his original bill. Section 11 of the Divorce statute provides that if it appears to the satisfaction of the court that both parties have been guilty of adultery when adultery is the ground of complaint then no divorce shall be decreed. There was a charge of adultery in both bill and cross-bill and that issue was in the case. Plaintiff in error had the right to have that issue tried and had a right to introduce evidence upon it. If the evidence

showed that defendant in error was guilty of adultery she was not entitled to a divorce even though the exhibits in question established that plaintiff in error was guilty of a like offense. The right to have this question tried was erroneously denied to plaintiff in error and a decree was entered granting a divorce to his wife, awarding her alimony and the custody of their children, and giving her and the children the use of the homestead, which was held in joint tenancy. Plaintiff in error did not have a fair and impartial trial.

The decree is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded.*